Well done. All right this is our final day of our sitting this week and our final case so let's go out with a bang. So we'll call it 24-30097 Breaux v. Worrell, if I pronounced that right. Whenever you're ready. How do you pronounce your last name? Joe Freon, like your average Joe and then Freon, the stuff you put in an air conditioner. Gotcha. That's helpful. Thank you. Welcome. Take it away. All right so my name is Garrett Joe Freon. May it please the court. I represent the plaintiffs Mr. and Mrs. Breaux. This case involves the interpretation of Louisiana law on an issue of first impression. When interpreting Louisiana law, federal courts must be mindful of Louisiana's civilian tradition that legislation is the primary source of law. Custom or case law is secondary and only when there's no guidance from legislation or custom are courts to look to outside or tertiary sources like Black's Law Dictionary. In this case the trial court admitted that it had to make an eerie guess because there was no controlling case law from any Louisiana appellate courts or the Louisiana Supreme Court. This involves the interpretation of revised statute title 29 section 735 which provides neither the state nor any political subdivision thereof nor other state agencies nor except in the case of misconduct the employees or representatives of any of them engaged in any homeland security or any emergency preparedness and recovery activities while complying or attempting to comply with this chapter or any rule or regulation promulgated pursuant to the provisions of this chapter shall be liable for death of or injury to any person or damage to property as a result of such activity. In this case Mr. Worrell is a private person so in order for summary judgment to be appropriate and he be entitled to immunity he must prove that he is one an employee or representative of a Louisiana political body, two that he is engaged in recovery activities at the time of the accident and three that the plaintiff's injuries were the result of recovery activities. It is plaintiff's argument that Kevin Worrell is not and never has been an employee or representative of the state of Louisiana or Terrebonne Parish. He was not engaged in recovery activities at the time of the accident and the plaintiffs were not injured as a result of any recovery activities. So are those are those terms representative and engaged are those factual questions that a jury should resolve? Are they legal questions for a court to resolve? I think they are. Or what? The evidence is what it is but this is mainly interpretation of the law is what he was doing. We know what he was doing. The facts are established. Is what he was doing actively engaged in recovery activities. And I'm sorry I lost my train of thought but it is defendant's argument that he was a representative of either the state or Terrebonne Parish despite language in the mutual aid agreement. Louisiana law on point legislation on point and quite frankly common sense. It is also their position that Mr. Worrell's very presence in Louisiana was necessary for quote-unquote recovery activities and that he is therefore immune from tort liability from the moment he entered the state of Louisiana until he left the jurisdiction. Louisiana law provides that immunity statutes are strictly construed against the party claim of immunity and in favor of maintaining the rules of action and that they must not be expanded beyond their obvious meaning. The term representative is defined in the Louisiana civil code under article 2985. A person may represent another in legal relations as provided by law or juridical act. This is called representation. Under the comments it essentially says that civil law representation is the same as common law agency. Being that legislation is the primary source of law we know that a representative is one who can represent another in legal matters. We don't have to look to any other source of law. Counselor, let me ask you a question. Yes sir. Many years ago a member of this court, Al Tate and Alvin Rumin, another member of this court, had tried to take a common law trained lawyer like myself to teach in the courts in Coatesville. I'm not sure that lesson ever took. I listened to Tate and I found out that the way in which the Louisiana law is admitted in civilian court differed so much from my common law training that I felt very uncomfortable. I feel that discomfort again in these questions. My question immediately was why this case, these issues, should not be certified to the court that speaks the civil language. It is bound up with very much with Louisiana and its state policies and it's very much in the sovereign interest of the state. It seems we're going to face this thing to be a decision that ought to come down with assistance ultimately by the court most confident in my view to decide it. I could not agree with you more. I've made that suggestion and even suggested two questions to be certified which would resolve this case entirely. Because this is an issue of first impression where it's the first time the private employee of a foreign entity that is an independent contractor contracted by local government has been given immunity under this statute. In every other instance, the immunity asserted was by someone directly affiliated with government. In Fortner v. Lewis, we have DOTD directly asserting. In Freeman v. State, the state, state agencies and direct employees. In Coontz, immunity is asserted by the parish sheriff. In Lemoyne, it's asserted by a National Guardsman acting as an agent of the state. In McWhirter, it's asserted by the state and the Department of Public Safety. In Robertson, it's asserted by the parish government. And most notably, in Cooley v. Acadian Ambulance, out of the Louisiana Fourth Circuit, 2011, immunity was asserted by the parish and a parish official. The independent contractor for the parish, Acadian Ambulance, did not assert immunity and opposed the immunity asserted by the parish. This would be the first instance that a private sector employee of a foreign entity in no way, that has no direct relationship with government, was afforded immunity under this provision of the law. And in my reply, I suggested the reason that the legislature crafted the laws this way, and it was that the legislature wanted to provide immunity to state and state agencies and other governmental entities and to those they would otherwise be vicariously responsible, which would be their employees and representatives. Terrebonne Parish is in no way responsible for Mr. Whirrell. He's from out of state. He, there's no evidence that he ever met with any person while in Louisiana outside of his own crew. There is no evidence that he communicated with anyone outside of his own crew. And as a matter of fact, the mutual aid agreement forbade it due to COVID-19 precautions. And it specifically said that the crews will remain isolated. How one can represent someone with whom he has never communicated escapes my understanding. The mutual aid agreement in 1997 provided that the personnel of the municipality, furnished by the municipality, shall be conclusively deemed for all purposes, conclusively deemed for all purposes, to remain officials of the municipality. Officials and employees of the municipality, and while providing aid here under, and while traveling to and from a beneficiary. They're even covered under Louisiana, I'm sorry, the North Carolina Workman's Compensation Act. And 2003 was amended and stated that the municipality is performing services under this agreement as an independent contractor. The municipality and beneficiaries shall not act or be deemed to act as agents or partners of the other, or be acting in any joint venture. Following Hurricane Ida, it was amended again. Personnel provided by the aiding signatory. Mr. Jofreon, just in your final 20 seconds or so, if, I'm not forecasting, predicting, previewing anything, but if the court were inclined to certify these questions of Louisiana law to the Louisiana Supreme Court, do you have any strong feelings, thoughts on the specific phrasing of what those questions ought to be? I did suggest them in the body of my principal brief, just before the conclusion. Anything you want to add beyond what's in your brief? I'm sorry, beyond what? Anything you want to add beyond what you've written in your brief on that point? Not on that point, Your Honor. Okay, we'll see you back on rebuttal. Good afternoon. Good afternoon, Your Honors. Ted, I'm vertically challenged, so I'm going to get this squared away. May it please the Court, my name is Sam Trish, and I'm here representing Mr. and Mrs. Edward and Linda Breaux. My colleague, Mr. Jofreon, misspoke. He represents Mr. and Mrs. Jesse and Vicki Blanchard in this matter. Your Honors, we think this is a twofold issue that presents before you today. As mentioned by Judge Hagenbotham and Judge Willett, this is a very uniquely Louisiana situation, but it is seemingly, to our eyes, a very distinct circuit split between the federal districts here in Louisiana, between the Western District and the Eastern District. The Eastern District in Banks v. the City of New Orleans essentially takes the former Robin v. U.S. and Martin v. U.S. cases and takes them under a framework of an independent contractor being discerned whether or not they remain independent contractors or are they transferred and reclassified as representatives under Louisiana for shortening the Disaster Act. The Banks Court, judge of the mail here in New Orleans, decided that basically, based on the framework of Robin and Martin, the state agencies, the state itself, exercised extensive operational control and applied directions to those independent contractors to determine whether or not they should be transferred and reclassified as representatives. On the other hand, we have Judge Joseph here in the Western District of Louisiana, Lafayette Division, basically broadly defining the term representative and impugning it into the legislation itself. We feel as though both of these cases are situations where there still remain genuine issues of material fact that should have been left to a trier of fact here, which would be a jury. And also we are concerned about the independent contractor status within the mutual aid agreement that the city of Worrell, excuse me, the city of Mr. Worrell and his employer entered into. If Judge Joseph impugns the term representative very broadly, as he does in his lower court decision, it basically erases the independent contractor status that the city itself entered into while entering into the APPA Mass Mutual Aid Agreement. On the other hand, we feel that this is also a different case, a case of first impression, before this court revolving around whether or not Mr. Worrell was actually actively engaged in emergency preparedness at the time of this accident. Mr. Worrell was sent to Louisiana to assist with the city and parish of Terrebonne in the city of Houma. He was about 40 miles away in Morgan City, Louisiana, in neighboring St. Mary Parish when this accident occurred. We understand that the eastern district in Lumpkin v. Landfair essentially identified that with obvious ingress there needs to be egress. We understand that. We see the rationale behind that argument. Our argument would be, as in the Benton v. Louisiana Department of Public Safety case, Judge Holdridge's dissent, it was very much apparent that the courts, especially including the Louisiana state courts, are very broad with their analysis of this disaster act. The trick is these immunity statutes, which in their nature deprive citizens of their personal liberties, the question became how far is too far, how broad is too broad. In this particular case, there needs to be a strict reading of the term engaged in emergency preparedness activities. As Judge Holdridge points out in his dissent in the Benton case, there are very rational things that the Louisiana state courts themselves have pointed out to be meaning actively engaged in. And those things, to the common eye, make sense. Situations such as this don't always necessarily, in our opinion, don't necessarily pass the smell test of engaged in active emergency preparedness activities. Mr. Worrell was traveling through St. Mary Parish and neighboring Parish of Terrebonne. He was exiting U.S. 90. Anyone who travels that area, that thoroughfare knows the main access from Houma to Lafayette is U.S. 90. They were getting off, according to them, because of construction purposes. But if they were getting off to go to Shoney's or if they were getting off to go to McDonald's, we don't have any scope of what breaks down the fact of how far is too far and what necessarily leads to nonimmune statutes. With that, I see my time is running short, and I'll briefly conclude. Basically, Your Honors, we are here to implore you that there are genuine issues of material fact that, obviously, us and learned counsel on the opposing side can reasonably disagree on. Based on these facts, we feel that this case should be remanded to the lower court, and the motion for summary judgment should be overturned, and this should be tried before a jury in the Western District. We appreciate your time. Okay, Mr. Kirish, thanks very much. All right, we'll now hear argument from counsel for Mr. Worrell. I may have trouble pronouncing your last name as well. It is Begnaud, Your Honor. Begnaud. Yes. Okay, welcome. Thank you. May it please the Court, Your Honors, on behalf of the City of Wilson, North Carolina, and Mr. Kevin Worrell. I'm also presenting today on behalf of all appellees, which will include traveler's insurance. Just to pick up, Judge Willett, where your question related to the application of the immunity statute, it's the appellee's position that that is strictly a matter of law, whether immunity applies. So it would not be a question for the jury. It is ultimately a question for the courts in which the district court did ultimately take on that task. Let me jump to banks, if I may. Banks has been extensively distinguished, I know, in my brief at page 15, in the traveler's brief at page 20. Here's the big distinguishing factor in banks. What you have in banks is you originally had FEMA tasking with the Army Corps to conduct debris removal work. At some point, that debris removal work kind of morphed into demolition work. And so, ultimately, what Judge LaMelle was kind of grappling with was the instruction and the directions related to why the Corps ultimately did that demolition work, made those demolition decisions. And that's why he ultimately ended up focusing on the language of, quote-unquote, direct relationship with the representative and operational control, because he was very concerned, for lack of a better term, that the Corps kind of went rogue on making demolition decisions and went outside the scope of the original debris removal assignment. And so that's why I think he focused on Robin and Martin, is because he felt like they ultimately, that direct relationship unfolded. So kind of to that point, what we do have in this case is more of a direct relationship with the state, with our state, and particularly Terrebonne Parish. And so let me just kind of point out a few things that are in the record, because there were some misstatements about never meeting anyone in HOMA and things of that nature. So let me jump to that direct point. If you're going to look at record page 475, that is going to be one of the transcript pages of Mr. Worrell's deposition, particularly at depot pages 22 through 25 and pages 30, lines 1 through 5. In that deposition testimony, you will see that Mr. Worrell confirmed that he met with representatives of HOMA, that they talked about what would be safe areas for them to work in that day. You also have Mr. Brian Parthas. I'm kind of segwaying to his declaration, which can be found at page 454 of the record. You also have him discussing how he individually met with representatives of Terrebonne and would talk about what needs to be done that day, would talk about where they needed to go, and then he would also have those tailgate conversations with his crew. So the theme that you'll see throughout the record and what the evidence shows is that there was direct communications with Terrebonne utilities with the City of Wilson crew. There's kind of been some misstatements as well, Your Honors, about the City of Wilson crew were here on their own, so they went to do work on their own. Electrical work's not that far different from other work where they're from. And let me just point out that the record is kind of clear in that you'll kind of consistently see that Mr. Worrell knew he was here in the state of Louisiana to help restore power to the citizens of Terrebonne Parish. Your point is that City of Wilson employees were clearly acting at the direction of local Louisiana officials. Of course, yes. So that's kind of clear in the briefing. How is that any different from if I have a contractor in my home? I mean, obviously, vendors typically work under the direction of the customer. Right. So I guess help me understand your hypothetical, because obviously you'll see that our position, Well, if I direct a vendor's employee, that doesn't make them my employee or my representative. I think the distinction with your hypothetical would be that we're dealing with specifics of the immunity article, right? And so the distinction with your hypothetical is we have to classify them as a representative and then whether they were engaged in emergency preparedness activities. Let's say I have somebody in my house installing some appliance. Your point was that there was clear direction and oversight. And I'm imagining that I might oversee the installation of an appliance at my home. Would that make that person my representative? For purposes of the immunity statute, I'm going to say yes, but specifically for purposes of the immunity statute. So let's say a foreign country has some sort of natural disaster and the United States sends its army to help out. Those U.S. soldiers are now foreign soldiers? I don't know if we need to necessarily start interplaying the terminology related to foreign and local, because think of it this way. I'm just trying to understand what representative and agent and employee means in a common sense way.  So let me just speak to your point, which you'll see in a lot of the Eastern District case. You did have an Illinois National Guardsman or a United States Army Sergeant here in the state, and they were held to be representatives, but at no point were they then switched to be termed Louisiana National Guardsmen or Louisiana or L.U.S. employees, right? So does that kind of help answer your question? I think we're getting focused on terminology, interplaying terminology, and maybe we don't need to. I'm just trying to figure out what it means to be a representative or employee. We're agreed that that's what we're looking at, right? Yes, sir. Yeah, so let me help you. And so does it make any sense to say that in any of my hypotheticals, let's go with the foreign country example again, the U.S. Army sends the troops over to help out. Are the U.S. troops now either employees or representatives of a foreign entity? That they're going to possibly be a representative of the state. Okay. Good luck. Well, that's why we're here, though, right? Because we are dealing with an out-of-state worker. The record is clear that he remains to be the employee of City of Wilson. At no point are we saying that he is an employee of HOMA. Right. You're focused on representative. We're focused on representative. But your submission is that under my foreign country hypothetical, yes, it could make sense to treat the U.S. soldier as a representative of the foreign country. Yes, for purposes of the statute. So it's a bold answer, but I have to answer it. It is indeed a bold answer. Thank you for that. Of course. And let me kind of lend some guidance on kind of where I'm kind of able to reach that logic, right? So let's just talk about the distinctions that I know appellants are kind of worried about when it comes to the independent contractor language with also associating with representative. Let's remember one thing. Back in the case of Robin, all right, that's when Judge LaMelle originally started looking at, does the act apply to a federal employee? Right. And so he said, hold on, the statute does not specifically provide for that. So the statute did not say that a federal employee could be a representative. But he didn't stop there. He specifically said the inquiry does not stop there. We must look to see if they are a representative under the statute. So that's when he ultimately concluded in Robin that that federal employee could be a representative specifically for the purposes of the Immunity Act. And that's what we have to keep kind of honing in on. We have to respectfully disagree with appellants' application of trying to argue that the definition of legal representation somehow now transcends to apply to the term representative as it relates to the act. That was also the position of the district court. You can find that in his reasons for ruling at record page 757. This also speaks to the comments, though, that can be found in 2985. It literally says at paragraph C where it notes that legal representation has nothing to do with the use of the word representation in the law of successions. It further says that the legal institution of representation has nothing to do with the use of representation to denote statements by one person to another. So, again, for purposes of the term representative as it speaks to the act, the plain meaning was applied correctly by the district court, and that is the appellee's position. This logic is not new. You can see something similar to that in the Louisiana Third Circuit court case that we cited to of Koontz. We have cited to that case at record page 701. What Koontz says is they also looked at the act, and that one particularly had to do with whether the willful misconduct applied. And what that court said was willful is not defined, misconduct is not defined, and willful misconduct is not defined. So at that point, then, the court said, well, hey, let's look at Black's Law Dictionary. That's what they did, and that's how they ultimately applied that definition. Your Honors, if there's no questions kind of related to the representative issue, I'll move on to engaged in emergency preparedness activities. Again, throughout the record, specifically at record pages 287, 262, which kind of sets the scene of ultimately why lodging was required for all of the city of Wilson crew members. Ultimately, as you've heard, they had to travel from Lafayette, Louisiana, to Houma every day. They would complete the restoration work in Houma and then be required to travel back to Lafayette. In reaching the conclusion that Mr. Morrell was actively engaged in emergency preparedness activities, we have cited to the acts intended purpose, which is found at 29 colon 7022. Also, the definitions, which can be found at 29 colon 723. We've also cited to the cases of Lumpkin, Robby, and Benton. But let me point to something that is not specifically in the briefs, but in the record. So if you look at record page 298, that is related to the 1997 Electricity Mutual Aid Agreement. In that, it says, quote, for purpose of this subsection, the term actively involved in providing emergency assistance shall apply to time worked, including travel time, and shall not apply to time when such individuals are sleeping or otherwise off duty. So if we reached the conclusion that Mr. Morrell was engaged in emergency preparedness activities just based on the case law and its statutory interpretations, I think that the mutual aid contract also speaks directly to the point that travel time to the necessary lodging is also considered engaged in emergency preparedness activities. What if he, on the way back from the job site, back to the hotel, he stops for this, stops for that, and is not disconnected to any work? As counsel mentioned, I know he was concerned about, I think he said he used the word Shoney's or McDonald's. I think that the inquiry and the judge's conclusion may change at that point. If there's an errand, right, it's kind of the same concept with workers' comp. Did they deviate from the errand and things of that nature? But we don't have that here. They were literally leaving HOMA and traveling to their lodging. The only reason they exited Morgan City is because the testimony is that there was heavy traffic. At that time, that's when the Morgan City Bridge was under construction. So I do think the conclusion, the analysis would be different if we had a, I'm going to McDonald's. But we don't have that in this instance. Does it matter that he was traveling as part of a group, part of a caravan? I think it speaks to the point, and that was the point in the travel brief, is that it speaks to the fact that they're kind of still all working together, right? And we've all seen the caravans of linemen. I'm sure everyone in this courtroom probably has. I think it speaks to the fact that they're still working, right? They're still unifiably going to where they need to go. And you're right. It may have been different if he was by himself for some reason. But the facts that we have for this case is that they were done for work in HOMA that day. They were traveling back to their lodging, and then they traveled back the very next day. And let's not forget how important the travel to the emergency area is. Not only are they providing a service from their labor, they're also having to transport their vehicle and things of that nature to actually complete the restoration work. Do you have any beef or quibble with how Mr. Jofreon phrased his preferred certification questions? Yes. So we definitely do not agree with those preferred questions, especially because he's terming it as, I believe he said, private employee. I think that's a huge distinction because Mr. Vorel was not a private employee. He was employed with the city of Wilson. And so he's not a private employee. And I think, let's go back to banks, right? So I think Judge Lamell would have agreed that if it was only debris work, he would have agreed that immunity may have applied. Because it had segued out to demolition work, he was concerned that it was outside the scope. But is your quibble more with the specific phrasing of the questions as opposed to the gist of the questions? I think it's both. So if this Court's inclined to need to certify a question, I guess the ultimate question, this kind of speaks to Judge Ho's issues, was, I guess the ultimate question is, is an out-of-state worker considered a representative for purposes of the Act? That may be where our focus needs to go for clarification for future cases. Because at the end of the day, he's just an out-of-state worker who came in, and we're going to have a lot of that, whether it's for ice storms or future hurricanes. And so I think the question is less, because, again, when you're analyzing it under the Federal Tort Claims Act, all the courts look to see if it was a, quote, unquote, private individual for purposes of the United States. And so I think if the Court's inclined to want to take this to a certified question, I think the heart of this, right, the real thing that we may be all grappling with is, is an out-of-state worker considered a representative for purposes of the immunity statute? What about what does it mean to be engaged in? Well, that's already defined. And what is emergency preparedness? Those are defined. So you can find those exact definitions at 29 colon 723. 735, okay. Well, 735 is the immunity statute. At 29, there's definitions at the 723. And 722 is the purpose. And so you'll see that the district court in his 17-page ruling really focused on the purposes of the act itself, how it was drafted. Would we need to ask also anything about, again, looking to 735, the immunity statute, what it means for injury to a person or damage to a property, what it means to be the result of such activity? Is there any need for clarification from the high court on that? I don't think I understand your question. Could you rephrase? Would it be prudent for us to ask the Louisiana high court the meaning of the phrase result of such activity? So 735, the immunity statute, when it talks about injury to a person or damage to a property, it says it needs to be the result of such activity. So is there any lack of clarity on what that phrase may mean and how closely related does an activity need to be to the damage in order for it to be the result of that activity? I don't know if you, I don't think the higher court in Louisiana really needs to speak to that because you'll see from the case law that we already have is that, you know, when they talk about the temporal relationship to the statute and when the activity was completed, some of them said, yeah, no, this is clearly within the meaning because it was, you know, three days after Hurricane Katrina. In the sense of banks, if we keep using that as an example, he said this was 18 months later and they demolished the plaintiff's home when they were not supposed to. And so that's where I think you already get your guidance from the temporal aspect and then the injury is obviously, the injury is clear, right? I'm looking at the mutual aid agreement. Yes, sir. 431 of the record. Do you happen to know if there are a number of these agreements in Louisiana or if this is pretty unique? Okay, so the way I understand it, and I think if you read the amicus brief, this may help with kind of the way it unfolds. So the way I appreciate it is that you have the APPA mutual agreement, which is the nationally accepted agreement. It's one page. I can give you the actual site of the record. It can be found at page 431 of the record. It's a one page. It is very broad. What I'm asking is are there a lot of these? This sort of goes to the certification question, right?  How often is this issue going to come up? Is this a one-off case or is this going to be such a recurring question of Louisiana law that maybe we do want to go ahead and get a… I don't know. That might have been a better question for amicus counsel. This is what I do know. I know that the APPA is the national form. So everyone, from what I understand, is a member of the APPA. And then you have someone like Electricity Cities, which is exclusive to North Carolina. And they have their own mutual agreement. Because what you'll see is that Electricity Cities helps coordinate within the state of North Carolina itself. And it seems to be why they had their own agreement. And then regarding LUS, they just did their addendum to the APPA. So are there a lot of Electricity ones floating out there? I genuinely cannot answer that. I don't know. I know I'm getting out of time. Anything else? Anything else? You've got 12 more seconds. All right, Your Honors. So instead of yielding, let me just say this much. I don't think it is appellee's position that the district court did not commit error. And we would respectfully ask this court to affirm their decision. Ms. Begnaud, thank you very much. Thank you very much. Appreciate it. Judge Rafferty, welcome back. Thank you, Your Honor. Just a quick question at the top. Opposing counsel directed us to focus on the Robbin case. It's Judge LaMelle's district court decision, which looks sort of a purposivist reading of the statute rather than textualist. Do I understand correctly from your take that there's sort of a split amongst the federal district courts on this question and perhaps even also the Louisiana Intermediate Courts of Appeals? Are we talking about Robbin versus U.S.? Yeah, Judge LaMelle. I did not focus on the split. Maybe it was your other counsel. Somebody had talked about how there are federal courts on both sides. I will point out that it involved a U.S. Fish and Wildlife agent, so, again, a direct employee of government. And he was acting at the direct request of the Louisiana Department of Wildlife and Fisheries to furnish an airboat and struck a pedestrian while en route towing that airboat. My question is, Judge LaMelle has one theory. I thought that you were saying that there are other federal courts with the opposite understanding of the law. It must have been my co-counsel. Okay. That's fine. We'll look. Thank you. So the relationship between Mr. Worrell, the tortfeasor, and the city of Houma, Terrebonne Parish, that there was any sort of relationship other than he was working in Terrebonne Parish is an invented fact. At no point did Mr. Worrell meet with anyone associated with Louisiana, Terrebonne Parish, the city of Houma. There's no evidence in the record to suggest that he so much as encountered a single Louisiana resident until he quite literally hit plaintiffs with his truck. The only person that he could remember was, quote, some black guy in charge of Houma, end quote. He had no relationship. It is an invented fact. It is one that the trial court relied on and may have thought that to be a reasonable fact to reach, but there's no evidence to support it. The term representative is defined not in the act itself but in the civil code. Yeah, the civil code. It is very clear that representative and agent are the same thing. We have employee and representative. Appellees have now admitted that they are not an employee of Terrebonne Parish or Houma, Louisiana. So the question is, is Mr. Wilson a—I'm sorry, Mr. Worrell a representative? And the trial court looked to Black's Law Dictionary to—for the definition standing in the place of, working on behalf of, which would make every employee the representative of his employer and every employee of every independent contractor a representative of the principal, as Judge Ho was alluding to earlier. The legislature chooses words purposefully. No words are supposed to be unnecessary or superfluous or redundant. So representative and employee must be different. In all of the other cases where we have government employees, where we have immunity, we have government employees, someone directly affiliated with government. Here we have a foreign—Wilson Electric, a foreign entity, a foreign corporation, and he is employed by this foreign entity in no way related to Louisiana government, state or local. As far as engaged in, we believe that actively engaged in, just using the tense of the verbs in the statute, there's some temporal limit, and that temporal limit cannot be just when he's asleep. It can't be when, you know, he spills hot coffee at breakfast on someone, on his—on a hotel manager. He's not liable. He's not actively engaged in recovery activities. What amici and appellees want is a legislative solution, and I'll conclude with this. The Louisiana legislature could have granted this blanket immunity to, quote, any person engaged in recovery activities at the request of the state or any state agency or political subdivision, while any such person is located in the state in response to a presidentially or gubernatorially declared emergency, simply by saying so, but it did not. Thank you, Your Honors. Thank you very much. Appreciate the arguments from both sides. The case is submitted, and the court will stand adjourned. Appreciate it.